We are here on our fourth and final day of this OA sitting. We've got three cases today. The first case is Penelope Stillwell v. State Farm Fire & Casualty Company, Motorist Mutual Insurance Company 21-13740. Mr. Friedman, you have reserved three minutes for rebuttal. You may proceed when you are ready. Good morning, Your Honors, and may it please the Court. I am Jeremy Friedman, appearing on behalf of Penelope Stillwell. We ask the leasing the tort feasors and premises owners from state law tort liability did not absolve the liability and no-fault insurance companies from their responsibility under the MSP for Williams' catastrophic injury. MSP rights and obligations exist separate and independent from the state law tort claims, and they are not disturbed by the payments the insurers may have paid to the beneficiaries. This is the law as stated by the statute, the regulations, and the case law. My brothers dismiss our arguments that were based on Judge Jofat's dissenting opinion from the denial of the en banc review in Humana, but they offer no explanation for why that decision was wrong, and we can find none. Can I ask you about where you're starting, which is the Medicare Secondary Payer Act claims? So, let's talk first about the reporting responsibilities. Do you agree there's no private right of action regarding reporting? That's correct, Your Honor. So really all we're talking about is the failure to pay for medical injuries that is the universe we're talking about here. That is. All right. So as I understand it, the three things need to be alleged. It's actually a fairly easy cause of action despite how difficult the statute is to weed through. The first is that they have to be a primary payer, and it seems to me that you've alleged that. The second is that they either had or it's had or has, in other words, presently or in the past, have had the responsibility to pay, and I'm paraphrasing. And then the third is damages, right? Yes, a demonstrated responsibility to pay as this court had held in the... Has or had a demonstrated responsibility to pay. Yes. Right. And then the third thing is damages, right? Is damages. Okay. So I have, so far we're on the same page. Yes. Okay. Now, I understand the had a responsibility because it seems to me that at least at some point, and I think you argue this well in your brief, they did, and they did have some responsibility under the act. That's your main claim, right? Yes. That the has or had means at the time of the reimbursement or any time prior. Right. So your point is at some point they had responsibility, and so there they meet the second element, right? And they demonstrated that responsibility because in the settlement they supposedly paid for the future damages. Well, I think that might be something that's disputed, and we'll get to that. But at the very least, at some point down the line, they were a primary payer that had a responsibility to pay some medical claims, right? Pay all medical costs that were related to the catastrophic injury. Okay. Now, I guess my question is, and this is where you and I might, we're pretty much on the same page, I think, but where we might differ is, and where you may push back a little bit, and please do, is on damages. Because it seems to me that the complaint alleges damages that aren't, that they had, but that they currently have in the present. And it seems to me also that the contract, the settlement agreement that was confirmed by both the two of the Illinois, or the Indiana courts, seems to suggest that as to future or as to anything else, the insurer is absolved. And so they don't have or has a demonstrated responsibility, even though they had one in the past. And so, and I'm sorry for the long question, but there seems to need to be a link between the demonstrated responsibility and the damage. And the way you seem to be reading it is, well, they had it, and there's some damages, and that's sort of it, and that's all you need. But I think that misses the connection element between when the demonstrated responsibility was, which was before the settlement agreement was there, and the damages that you allege in the complaint, which are after the settlement agreement. Where am I missing something? I think that you're missing, I would push back on it. Please. The issue is whether or not the settlement agreement terminates the insurer's responsibility to pay for the injury-related medical costs. Doesn't it essentially say that it does? It can't. Well, that's where I think that we may have some disagreement here. Because under the cause of action, again, the simple cause of action, I don't see anywhere in the statute that prohibits an insurer from saying, I'm giving you a lump sum for settlement here, and I certainly had a responsibility at some point, but this lump sum takes care of everything, and I am absolved under my contract from any future obligations. They are absolved of any obligations to the plaintiff for the tort damages, but the payment does not absolve the responsibility for the insurers to pay for the Medicare. This is coverage, it's a coverage of benefits. It's not tort liability. Why would they settle? Well, actually— It would be sort of an open-ended book, wouldn't it? To require— That's your position. It means that the insurance company cannot escape their MSP liability by settling. What I'm saying is, what would be the incentive to settle if you have a long future obligation? Well, they do have— Insurer. They do have a long-term obligation, not as a result of the tort claim, but as a result of the MSP claim. I understand what you're saying. Well, to quote, if I may, Your Honor, your dissent stated differently, a beneficiary's release of a liability insurer does not extinguish the liability insurer's obligation as a primary payer to reimburse the government. The government does not occupy the status of a subrogee as part of the beneficiary's claim against the tortfeasor. It has reimbursement rights against the tortfeasor's liability that are independent of the insured's right of action for recovery under the law. There's no doubt that that's right, but that doesn't say it's ad infinitum after settlement. That's not what that says. Well, in the Humana decision, in the panel decision, it said Western's payment to release or any other party is insufficient to extinguish its prospective reimbursement obligation. If the insurance contract requires it and if the parties don't state that the settlement is for everything. Those weren't the facts of that case, were they? The insurance policies do require that they pay for all of the injury-related damages. And so, therefore, State Farm and motorists were both insurers for any damages that were related to the injury. You didn't answer my question, though. Humana didn't have the situation here where the parties have agreed that you've paid me everything that I'm owed under the contract, and I agree to be bound by any future medical expenses. That wasn't the facts of Humana. If it was, it'd be a really easy case and we probably wouldn't be here for oral argument, right? You know, I'm not certain, Your Honor. I thought that Humana did, it was a question as to whether or not the Medicare Advantage Organization could enforce the MSP provision, and there was a payment for the injuries, and the question was, there wouldn't have even been an action for MSP recovery had the settlement extinguished their obligation. There's no doubt that the insurance company here was obligated under the Medicare Secondary Payer Act, at least to me, and I'm only speaking for myself, for those medical expenses that happened before the settlement. There's no doubt in my mind about that. That's clear. But you don't allege damages regarding those. You only allege damages, because it was paid, you only allege damages for things that happened after the settlement, and it's that disconnect between, and the statute is clear. It has to be one, has responsibility, or two, or has, meaning current, or had, past. And here, it seems to me that there's a past responsibility, but only future damages. There seems to be a disconnect between damages and responsibility. Where am I missing something? If I understand the court correctly, what this means is that what State Farm and Motors is arguing for is that once they enter into a settlement of all injury-related damages with the plaintiff, then they are released from having any insurance responsibilities vis-à-vis MSP. Isn't that what the Third Circuit said in Taranski? Like the other courts of appeals that have considered the issue, we hold that the fact of settlement alone, if it releases a primary plan from claims for medical expenses, is sufficient to demonstrate the beneficiary's obligation to reimburse Medicare. Your Honor, I'm sorry. I'm unaware of that. But I do think that what this would mean is that you would be importing a rule like there is for workers' comp into liability where none exists. And what it would mean is that insurance companies would settle early if the question is any post-settlement, as opposed to post any medical care that is caused by the injury. Counsel, workers' comp and PIP are, by their nature, future-looking, forward-looking. In other words, workers' comp is, I am going to cover you for your medical expenses because of your injury. Liability insurance, while incorporating a future medical expenses, the purpose is very different. The purpose is to compensate for a prior injury, which is what happened here, right? It's a prior injury, but it's for all of the medical care that continues thereafter. I know, but if I think my claim is not so great, and I think I only have a 5% chance of winning, even though my injuries are $800,000, is it not reasonable to say I'll take the $200,000 and do away with the risk because I may not get nothing at the end of the day if we litigate this thing? It's very reasonable for the plaintiffs to want to settle. And to waive any responsibility by the primary insurer for future medical coverage, or to say that the payment covers everything under the sun. That's exactly right, Your Honor. The settlement agreement is a contract with the beneficiary. It's a contract between the insurer and the beneficiary. It doesn't waive MSP liability. You can't defeat federal rule by contract. You understand, though, that if we were to adopt your reading of this, no settlement would ever occur? That's not true, Your Honor. In fact, this settlement occurred. And the reason why is because the insurance company... It occurred without that caveat. It occurred... I'm sorry, Your Honor. I don't think the settlement occurred, and the lawyers were saying, now State Farm, you've got liability down the road, in addition to the money paid. It's not up to the beneficiary to say, State Farm, you either have liability or don't have liability. That is a right that belongs under the MSP to the government. And the question becomes, can the beneficiary and the insurance company reach some agreement that releases the insurance company of its obligation to compensate, to cover? This isn't like... Down the road. Down the road. Because in this case, there was $2.1 million worth of medical claims that were made. And State Farm, of course, wanted to settle the claim to get out of having to pay any more money to the plaintiffs. But they can't pay a fraction of that to the plaintiffs, get them to sign off on a contract, and then absolve themselves of their responsibility. Mr. Friedman, you have reserved three minutes for rebuttal. Thank you. Thank you, Your Honor. Mr. Reed. If it pleases the Court, my name is Ben Reed. Given that our positions are identical, Mr. Franz and I have agreed to split the time, and I'm going to talk about MSP and he's going to talk about... Let me answer some of your questions that you've asked already. When the question was asked about all they released were past and future and known and unknown medical, they also released and took responsibility for all future liens, which is a different situation. Could the insurer have said, let's assume there were some outstanding bills in the past that had been incurred, not future, so that's a different... I get that that's different than what we have here. Could the insurance company in a settlement say, I am absolved from responsibility for those past having been incurred medical expenses? Well, we would have already been determined to be a primary payer, and, in fact, we did, as I was going to add to your question from a moment ago, we did, in fact, pay every cent that CMS requested. Is the answer to my question no? You couldn't do that. If CMS made the claim, that's right. I don't think CMS has to make the claim, as I understand it. All that has to happen is that there needs to be a judgment, a contract, a release of some sort. That's what's required to trigger the responsibility, right? Yes, sir. So you couldn't go back and say, there's these medical expenses. We're not going to pay them. We're not responsible for them. We're putting that responsibility on the payer, and here's $50,000 for your trouble. Well, I'm not sure what the ultimate legal answer would be, but that could be negotiated, but it's all likelihood that they could not argue that they were not primary since it seems to have met the criteria for everything pre-settlement. So you can't contract around this thing. I mean, the concept is right. The question seems to me is, was there a demonstrated responsibility now or post-settlement? How do we get there? That, to me, is the crux of what this is. Yes, sir, and the answer to that is, as the courts have held, it depends on what the settlement is the key, the language. As the court is aware, the plaintiff agreed not only to be liable for future claims, but also for future liens, and therefore, given that that was their agreement and they agreed to that, they also said they weren't interested in a set-aside. They made a business judgment. They also agreed that they'd be responsible. I'm sorry to interrupt, but so the real legal question is— I'm just trying to understand how we write this. The real legal question is what we look at. In other words, if we look at just the insurance contract, the insurance contract calls for future medical expenses related to occurrences or injuries, right? Most do, yes, sir. Right, and this one did. Yes, sir. Okay, but what you're saying is the MSP Act requires that we look to the judgment, if it went to trial, or to the settlement, the contract between the parties. That's exactly our position. The reason, when the statute talks about how you get to the point to demonstrate, you can use one of those things, and in this case, it's the settlement agreement. Now, counsel talks about— What's the textual basis for that position? It's in the statute, and it provides— Is it the definition of what is demonstrated responsibility? Responsibility for such payments to be demonstrated by, et cetera, et cetera. Yes, sir. It's in 1395Y2B2i. In this case, the demonstrated responsibility, they're using that hook to get here, but then they have to rely on what they said. Also, the other point is the Indiana court specifically dealt with this issue, and it was affirmed by the trial court, and it was affirmed by the appellate court, and the Supreme Court of the United States, and the Supreme Court of Indiana did not review. That's what they're—they're trying to change what they agreed to. That's simply what happened, and there is a suggestion to this. Now, Judge Schofield's point about never having a settlement, Judge Branch also, there would be no settlements. How could you ever settle if you thought that they could come back in two years, three years? In other words, if the question was what the insurance contract said and not what the parties actually agreed to, then there'd be no reason for them to settle because the contract would always say it covers future medical expenses. Like Workman's Comp. Like Workman's Comp, that's right, and they rely on that, and that obviously—Congress knew how to write that provision, or to write something such as Workman's Comp. If it was Workman's Comp and you were going to settle, you wouldn't pay anything else. You'd just pay whatever the bills are. Well, that's a different context, and like I say, they've argued that this court should adopt, but of course this court isn't the adopting one. It'd be Congress, and they know how to do it. They know what to ask for and how to word that, so therefore they didn't in this case. The other questions that came up were— I mentioned that we did pay everything that was— that we satisfied the lien in full without any extra amount. There's no allegation in the complaint that anything is owed prior to the date of the settlement. Absolutely, absolutely, and in fact the documents reflecting that are attached to— the plaintiff attached those to their complaint. The three documents which set up the original plan and then the two times where they changed it from $10,000 to $19,000, and all of that was paid. The courts have held that the settlement defines and limits the State Farm's obligations. Let me just say this. Judge Schofield, when they were asking about your comment, I read what you said to mean that you can go after both parties, that you weren't making the distinction that applies in this case. You were just saying you can go after either or both parties, and so I wanted to clear that up. So the bottom line is that the statute talks about the party's payment obligation. The statute defines primary plan as a liability insured to the extent that Clause 2, and Clause 2 says Medicare should not pay when payment has been made or obligation to pay post-settlement medical expenses in this case. As I say, there are two ways to solve this problem. One is don't settle if you're the plaintiff. One is don't settle, go to trial. We don't know why they agreed to take $200,000, but that was the agreement. If you read all the settlement agreement that was affirmed by the court, they specifically agreed that they were taking Medicare into account, that it was voluntary, they had lawyers, and it wasn't until after the settlement was affirmed by the Indiana courts that this individual case was filed. They settle for the same reason anyone settles. Exactly. The uncertainty of litigation and the present value of money versus when I would actually get the money at the end of a trial. That's why people settle. To sort of summarize what Judge Merriday found and what we would encourage this court to agree with, first of all, he found that the Stilwells, when they accepted the lump sum settlement, they released the insurers from the obligation to pay post-settlement medical expenses. Secondly, he held that the Stilwells and not the insurers, and they say specifically in one of the settlement agreements, the judge actually wrote out a new settlement agreement within the opinion, became responsible, the Stilwells became responsible for payments as well as the satisfaction of future liens. And finally, State Farm did not, we haven't talked about this much, and I think, Judge Luck, you sort of put it aside at the beginning because there's no dispute that notice was provided. CMS, there are things in the brief about it sent to the wrong person. I just don't see how there's a cause of action for it. There clearly isn't a cause of action, but there's also the policy of the statute to make sure CMS knows what's going on was accomplished. So I have seven seconds if anybody has another short question. Thank you for your attention. Mr. Franz. Good morning. May it please the Court, Kevin Franz on behalf of Motors Mutual. As Mr. Reed indicated, I have primary responsibility for discussing the False Claims Act. There was no discussion about the False Claims Act. Go ahead and talk. Okay. I'm interested in hearing about it. Specifically, I think I'm most interested in hearing about the causation element. I think that's where maybe your opposing counsel has the most trouble in whether there was plausibly alleged that whatever was done, whether there's liability, let's assume liability, let's assume that you all did something wrong, your company did something wrong. How did that cause doctors years later to submit false claims? Okay. Yes, Your Honor. And they basically proceed under sort of two theories. They argue very vaguely and conclusory, defendants' actions, claims processing procedure, and failure to report caused Stillwell's healthcare provider to submit false claims to Medicare, and they rely on the global release. The global release, of course, has already been adjudicated as enforceable and valid, so that is really off the table, and there's nothing to suggest that these providers got their hands on the global release. It's simply not in the case. It's not in the pleadings. In other words, there's no allegation that they knew that there had been a release from future claims and understood that that would have been illegal and yet still decided to send to Medicare the obligations that the Stillwells were the primary payers. Correct. And that is something that would have had to have been a pled with particularity, the who, what, where, when, why, how of these fraudulent communications, who spoke with who, when did this occur. Of course, that's nothing that did not occur. With regard to the failure to inform the doctors about anything, there are no allegations, again, pled with particularity how anyone from the defendants in this case directed, induced, prompted any of the healthcare providers. Is that what's required? Is it not enough that something is just foreseeable, that an action that you do, an intentional action that you do, has a foreseeable consequence, in this case, the submission of claims that the insurance company apparently knew was false? That's only one element of it. You have to show that you did something to prompt or direct or induce. And of course, there are no allegations of any communications whatsoever between the defendants and healthcare providers, let alone that they prompted them to do anything, let alone that they prompted them to do anything illegal or false. In fact, the Medicare claims processing manual imposes a duty on the providers to complete their claims on the basis of information obtained by the insured. So if anyone was responsible for communicating something with these doctors In other words, we don't put the responsibility on providers to go investigate the nature of who's the primary payer. Correct. What happened in this case is a model example of what should happen in terms of settlement. The CMS learns about everything. They knew the beneficiary. They knew the date of the injury. They knew that there was a settlement. They knew that there was insurance involved. They sent letters saying, Hey, we have paid out in conditional payments $30,000. We are owed $19,000. Someone needs to pay this. And of course, the Medicare statute says that either the primary plan or the beneficiaries can pay. So in that case, if for whatever reason they hadn't paid, you agree you would have been on the hook for the $19,000. Right, exactly. And in this case, they received to the penny what they asked for. So the whole point of the Medicare Secondary Payer Act is to make sure that Medicare doesn't pay for something that they're secondary payers on. And the reporting is to make sure that you don't keep Medicare in the dark. Obviously, there are so many claims. It's very hard to keep track of all these claims. So you want Medicare to know what's going on. Who's the beneficiary? Is there a settlement? Okay, good. Here's how much we paid. Here's how much we want back. So this is actually a model case of how that happened. Could the FCA support a failure to notify claim? Again, I know you allege that there was sufficient notice with regard to what you call the TCOP or the TCO. But let's assume for the moment that there wasn't. Could the FCA support a lack of notice claim? No. Liability, and this comes from this court's decision in Corsello v. Lincare, liability under the False Claim Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies. In other words, it doesn't create a cause of action where none existed beforehand. Right, and really the only penalty for failure to report is a $1,000 fine. And we've cited the case U.S. Petratos v. Genentech from the Third Circuit Court of Appeals 2017 that the failure to comply with reporting requirements on its own does not establish materiality necessary for a False Claims Act. Unless the court has any further questions, I'll rest on my briefs. And we would respectfully request that the court affirm the judgment in favor of the defendants. Thank you. Mr. Friedman, you have three minutes. First, to address the issues on MSP, State Farm is arguing that the scope of the obligation is derived from the claim after the settlement. And the Haddon case that's cited and discussed in the brief says the exact opposite. The scope of the obligation is from the claim that was made, not from the settlement. So because there was a claim for future damages and the contract required future damages, they have an obligation under MSP for that. This goes to my question, which is, doesn't the statute require us to look at in determining the obligation, the demonstrated responsibility, the settlement agreement and not the insurance contract? No, it's the contract, Your Honor. Tell me, where do I get that from? It's because the settlement agreement, once they enter into a settlement agreement, that shows that they had an obligation to pay. You could sue somebody for liability. I agree with you completely. But I agree with you for the past. In other words, there's no doubt in my mind that they had a responsibility under the statute. But there's no damages related to the past responsibility. We're here talking about a contemporaneous responsibility with the future medical expenses. The obligation comes from their insurance policy that requires coverage of injury-related damages. The obligation doesn't... Doesn't the settlement... I apologize, Judge. No, I was just going to say, explain to me why the settlement agreement isn't extinguishing the rights under the insurance contract. Because they had an obligation, and the contract with the claimant, with the beneficiary, cannot terminate that. It has to be... What legal support do you have for that proposition? Well, that is from the regulations. That's from the statute. The had or has. That's from the Federal Register. What legal support do you have for the proposition that even though there was an obligation, that a settlement agreement, you're saying, does not have the power to extinguish that obligation? Because the settlement agreement is a contract between the beneficiary and the insurance company, and that cannot terminate the Medicare's rights, the government's rights to reimbursement. It's a coordination of benefits. That is 100% true. But the obligations that we're talking about here didn't exist at the time of the contract. So you're right. For the past obligations, the settlement could not extinguish those. You're 100% right about that. But there was no demonstrated responsibility at the time that these medical expenses, the one that are alleged in the complaint, right? They still had a demonstrated responsibility because they had a contract that required them pay for damages related to the injury whenever they occurred. The settlement agreement extinguished that obligation. The contract could not have extinguished the MSP obligation. You're arguing it was a matter of public policy, I suppose. It's a matter of law. It's a matter of what you held in your dissent. It's stated in the Federal Register, this means that a primary payer may not extinguish its obligations under MSP provision by paying the wrong party. For example, by paying the Medicare beneficiary or the provider when it should have reimbursed the Medicare program. That's right out of the Federal Register. This is the regulation, Section 411.22. I see I've exceeded my time. Thank you. Thank you. We have your case under advisement. Thank you.